IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| NATIONAL CREDIT UNION ADMINISTRATION BOARD, as LIQUIDATING AGENT FOR ST. PAUL CROATIAN FEDERAL CREDIT UNION, | CASE NO. 1:11 CV 788 <br><br> MAGISTRATE JUDGE WILLIAM H. BAUGHMAN, JR. |
| Plaintiff, | |
| v. | **MEMORANDUM OPINION AND ORDER** |
| TRAVELRODS LTD., *et al.*, | |
| Defendants. | |

# Introduction

Before me[1] in this matter arising out of the liquidation of the St. Paul Croatian Federal Credit Union (St. Paul) is a motion by the National Credit Union Administration Board (NCUAB), in its capacity as the liquidating agent for St. Paul, seeking summary judgment against defendant Vladimir Rus.[2] By this motion, NCUAB maintains that Travelrods Ltd., a corporation operated by Rus against which NCUAB has already obtained a default judgment, is actually a sham entity that was merely the alter ego of Rus.[3] Thus, NCUAB now

---

[1] The parties consented to my exercise of jurisdiction. ECF # 18. Accordingly, United States District Judge Patricia A. Gaughan ordered the matter transferred to me for further proceedings. ECF # 19.

[2] ECF # 60.

[3] *Id.* at 1.

seeks to pierce Travelrods's corporate veil and hold Rus personally liable for the existing judgment against Travelrods.[4] Rus, who is proceeding *pro se*, opposes the motion.[5]

For the reasons set forth below, NCUAB's motion will be denied.

## Facts

The relevant undisputed facts necessary to adjudicate the motion are not extensive and are largely found in Rus's deposition.

Travelrods was created by Rus in 2003 with the majority of its initial capital coming from St. Paul as a loan.[6] Because the business model for Travelrods involved custom assembly of high-end fishing rods from components made by others,[7] Travelrods planned to use only independent contractors in rented space to fill orders, thus obviating the need for any equipment, employees, or real estate.[8] Within a few months of its formation, Travelrods, through Rus, obtained $525,000 in loans from St. Paul.[9] Key Bank records supplied by Rus purportedly show that $301,096.71 in deposits were made to the Travelrods account beginning in December, 2004, of which Rus asserts that $101,096.71 came from operations

---

[4] *Id*.

[5] ECF # 60.

[6] *Id*. at 4 (citing deposition).

[7] *Id*., Ex. 2 (Rus deposition) at 26-27.

[8] *Id*. at 28.

[9] *Id*.

of Travelrods.[10] Travelrods never formally went out of business but basically stopped receiving new orders in 2010-11.[11] According to Rus, Travelrods made some payments to St. Paul on the loan for an undetermined period of time.[12] He received no income from Travelrods.[13]

In addition to Travelrods itself, Rus obtained funds from St. Paul through the Travelrods account to initiate another business – Amazing Vase.[14] Essentially, the concept for Amazing Vase was to supply individual Walgreens stores with fresh flowers.[15] Rus testified at his deposition that the concept never turned into a viable business, however, because of difficulties in maintaining the stability of the floral storage gel at the cold temperatures encountered during overnight air shipment of the flowers.[16] When the gel problem could not be resolved without a significant new investment, Rus stated that Amazing Vase's startup capital of $100,000 – obtained as a loan through the St. Paul Travelrods account – was spent "really fast" without any profit.[17]

---

[10] ECF # 62, Ex. 2, Attachment B1-B6.

[11] ECF # 60, Ex. 2 at 96-97.

[12] *Id*. at 65.

[13] *Id*. at 75.

[14] *Id*. at 137-38.

[15] *Id.* at 132.

[16] *Id*. at 37-39, 136-37.

[17] *Id*. at 138.

Rus testified at his deposition that all records pertaining to Travelrods and Amazing Vase were disposed of at the time he went through a bankruptcy in 2010.[18] He also testified that corporate formalities for Travelrods were not kept. In addition, Rus testified that he was the sole person operating Travelrods and in control of the Travelrods loan account[19] and that he maintained corporate records for Travelrods "for a while," though not "meticulous[ly]," and such records were among those disposed of after the bankruptcy.[20]

In its motion, NCUAB maintains that, under applicable Ohio law, Travelrods's corporate veil should be pierced.[21] Rus, for his part, contends that genuine issues of material fact remain as to the elements required for veil-piercing.[22]

## Analysis

### A. Standard of review – summary judgment

Summary judgment is appropriate where the court is satisfied "that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[23] The burden of showing the absence of any such "genuine issue" rests with the moving party:

---

[18] *See*, *id.* at 35.

[19] *Id*. at 54-58, 61.

[20] *Id.* at 87.

[21] ECF # 60.

[22] ECF # 62.

[23] Fed. R. Civ. P. 56(c).

-4-

> [A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions answers to interrogatories, and admissions on file, together with affidavits, if any,' which it believes demonstrates the absence of a genuine issue of material fact.[24]

A fact is "material" only if its resolution will affect the outcome of the lawsuit.[25] Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards.[26] The court will view the summary judgment motion "in the light most favorable to the party opposing the motion."[27]

Summary judgment should be granted if a party who bears the burden of proof at trial does not establish an essential element of his case.[28] Accordingly, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient; there must be evidence on which the jury could reasonably find for the plaintiff."[29] Moreover, if the evidence presented is "merely colorable" and not "significantly probative," the court may decide the legal issue and grant summary judgment.[30]

---

[24] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (citing Fed. R. Civ. P. 56(c)).

[25] *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986).

[26] *Id.* at 252.

[27] *United States v. Diebold, Inc.*, 369 U.S. 654, 655 (1962).

[28] *McDonald v. Petree*, 409 F.3d 724, 727 (6th Cir. 2005) (citing *Celotex Corp.*, 477 U.S. at 322).

[29] *Leadbetter v. Gilley*, 385 F.3d 683, 689 (6th Cir. 2004) (quoting *Anderson*, 477 U.S. at 248-49).

[30] *Anderson*, 477 U.S. at 249-50 (citation omitted).

In most civil cases involving summary judgment, the court must decide "whether reasonable jurors could find by a preponderance of the evidence that the [non-moving party] is entitled to a verdict."[31] However, if the non-moving party faces a heightened burden of proof, such as clear and convincing evidence, it must show that it can produce evidence which, if believed, will meet the higher standard.[32]

Once the moving party has satisfied its burden of proof, the burden then shifts to the nonmover.[33] The nonmoving party may not simply rely on its pleadings, but must "produce evidence that results in a conflict of material fact to be solved by a jury."[34] The text of Fed. R. Civ. P. 56(e) states:

> When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial.

"In other words, the movant can challenge the opposing party to 'put up or shut up' on a critical issue."[35]

Though parties must produce evidence in support of and in opposition to a motion for summary judgment, not all types of evidence are permissible. The Sixth Circuit has concurred that "'it is well settled that only admissible evidence may be considered by the trial

---

[31] *Id.* at 252.

[32] *March v. Levine*, 249 F.3d 462, 471 (6th Cir. 2001).

[33] *Anderson*, 477 U.S. at 256.

[34] *Cox v. Kentucky Dep't of Transp.*, 53 F.3d 146, 149 (6th Cir. 1995).

[35] *BDT Prods. v. Lexmark Int'l*, 124 F. App'x 329, 331 (6th Cir. 2005).

court in ruling on a motion for summary judgment.'"[36] Rule 56(e) also has certain, more specific requirements:

> [it] requires that affidavits used for summary judgment purposes be made on the basis of personal knowledge, set forth admissible evidence, and show that the affiant is competent to testify. Rule 56(e) further requires the party to attach sworn or certified copies to all documents referred to in the affidavit. Furthermore, hearsay evidence cannot be considered on a motion for summary judgment.[37]

However, the district court may consider evidence not meeting this standard unless the opposing party affirmatively raises the issue of the defect. The burden is on the opposing party to object to the improper evidence; failure to object constitutes a waiver.

> If a party fails to object before the district court to the affidavits or evidentiary materials submitted by the other party in support of its position on summary judgment, any objections to the district court's consideration of such materials are deemed to have been waived, and [the Sixth Circuit] will review such objections only to avoid a gross miscarriage of justice.[38]

As a general matter, the judge considering a motion for summary judgment is to examine "[o]nly disputes over facts that might affect the outcome of the suit under governing law."[39] The court will not consider non-material facts, nor will it weigh material evidence to determine the truth of the matter.[40] The judge's sole function is to determine whether there

---

[36] *Wiley v. United States*, 20 F.3d 222 (6th Cir. 1994) (quoting *Beyene v. Coleman Sec. Servs.*, 854 F.2d 1179, 1181 (9th Cir. 1988)).

[37] *Id.* at 225-26 (citations omitted).

[38] *Id.* at 226 (citations omitted).

[39] *Anderson*, 477 U.S. at 248.

[40] *Id.* at 249.

is a genuine factual issue for trial; this does not exist unless "there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party."[41]

In sum, proper summary judgment analysis entails:

> the threshold inquiry of determining whether there is the need for a trial – whether, in other words, there are any genuine factual issues that properly can be resolved only by a finder of fact because they may reasonably be resolved in favor of either party.[42]

**B.      Standard of review – alter ego/piercing the corporate veil**

Ohio courts acknowledge that piercing the corporate veil is an exception to the general rule that shareholders are not personally liable for the debts of a corporation.[43] In *Belvedere Condominium Unit Owners' Association v. R.E. Roark Companies, Inc.*,[44] the Ohio Supreme Court set forth a three-prong test for piercing the corporate veil:

> [T]he corporate form may be disregarded and individual shareholders held liable for corporate misdeeds when (1) control over the corporation by those to be held liable was so complete that the corporation has no separate mind, will or existence of its own, (2) control over the corporation by those to held liable was exercised in such a manner as to commit fraud or an illegal act against the person seeking to disregard the corporate entity, and (3) injury or unjust loss resulted to the plaintiff from such control and wrong.[45]

---

[41] *Id.*

[42] *Id.* at 250.

[43] *Bumpus v. Ward*, 2012 WL 4789768, at *7 (Ohio Ct. App. Oct. 9, 2012) (citing *Dole Food Co. v. Patrickson*, 538 U.S. 468, 475 (2003)).

[44] *Belvedere Condo. Unit Owners' Ass'n v. R.E. Roark Cos.*, 67 Ohio St. 3d 274, 617 N.E.2d 1075 (1993).

[45] *Id.* at 289.

Subsequent to *Belvedere*, the Ohio Supreme Court in *Dombroski v. WellPoint, Inc.*,[46] clarified that "to fulfill the second prong of the *Belvedere* test for piercing the corporate veil, the plaintiff must demonstrate that the defendant shareholder exercised control over the corporation in such a manner so as to commit fraud, an illegal act or similar unlawful act."[47] In that regard, the Court emphasized that "the second prong of the *Belvedere* test specifically refers to fraud or an illegal act and does not refer to mere unjust or inequitable acts that do not rise to the level of fraud or illegality."[48] Further, *Dombroski* makes it plain that courts should move "cautiously" in regards to piercing the corporate veil in cases of alleged shareholder wrongdoing, and only do so "in cases of extreme shareholder misconduct."[49]

**C. Application of standards – NCUAB's motion will be denied because, construing the evidence most favorably to Rus, the element of fraud, which is required to pierce the corporate veil, is here a disputed material fact not resolvable on summary judgment.**

Before addressing the substance of the motion, I make the following preliminary observations.

---

[46] *Dombroski v. WellPoint, Inc.*, 119 Ohio St. 3d 506, 895 N.E.2d 538 (2008).

[47] *Id*. at 513.

[48] *Id*.

[49] *Id.*

First, although the matter was not briefed by the parties, I find that Ohio law is applicable to the issue of piercing the corporate veil in this matter.[50] I also find that Ohio law applies its veil-piercing doctrine to a limited liability company.[51]

Next, I note that because piercing a corporate veil in Ohio involves "delicate judgments" concerning "the special facts of each case," Ohio courts customarily view the question as "primarily a matter for the trier of fact."[52]

Finally, although NCUAB is correct that a district court is not obligated to search the entire record for facts that might support a non-moving party's argument,[53] it is also true that a court must read the pleadings of a *pro se* litigant, such as Rus, more leniently than it would those of a party represented by counsel.[54]

That said, I observe that to state a claim for fraud under Ohio law, a party must allege:

(1)  a representation, or where there is a duty to disclose, a concealment of a fact,

(2)  which is material to the transaction at hand,

---

[50] *U.S. v. Nagelberg*, 772 F. Supp. 120, 123-24 (E.D.N.Y. 1991) (New York veil-piercing law applied to NCUAB's motion for summary judgment).

[51] *See*, Bumpus, 2012 WL 4789768, at *8.

[52] *State ex rel. DeWine v. S&R Recycling*, 195 Ohio App. 3d 744, 753, 961 N.E.2d 1153, 1159 (2011) (internal quotation marks and citations omitted).

[53] ECF # 60 at 9 (citing *InterRoyal Corp. v. Sponseller*, 889 F.2d 108, 111 (6th Cir. 1989)).

[54] *See*, *Wolfel v. United States*, 711 F.2d 66, 67 (6th Cir. 1983) (*pro se* pleadings will be accorded a "measure of leniency to be sure that meritorious claims will not be dismissed for inartful draftsmanship").

 (3) made falsely, with knowledge of its falsity, or with such utter disregard and recklessness as to whether it is true or false that knowledge may be inferred,

 (4) with the intent of misleading the other to rely upon it,

 (5) justifiable reliance upon the representation or concealment, and

 (6) a resulting injury proximately caused by the reliance.[55]

Moreover, under Ohio law "the question of whether particular statements are fraudulent or misleading is generally one of fact."[56]

Here, the evidence for fraud adduced by NCUAB is minimal, is disputed by Rus, and is not fully supported by the record.

For its part, NCUAB contends that Rus committed fraud by obtaining the loan from St. Paul in the name of Travelrods when Rus knew that Travelrods was not operating and when he knew that the loan proceeds were going to be used by him personally.[57] Further, NCUAB argues that it was fraud for Rus to represent on the loan application that the loan was to be secured by funds on deposit at the credit union when there were not sufficient funds on deposit to secure such a loan.[58]

---

[55] *Williams v. Citimortgage, Inc.*, No. 11-3431, 2012 WL 3834776, at **2-3 (6th Cir. Sept. 4, 2012) (citation omitted).

[56] *Id.*, at *7 (citation omitted).

[57] ECF # 60 at 6-7.

[58] *Id.* at 7.

As to the first claim, that Rus obtained a loan in the name of Travelrods when he knew it was not a going business and when he knew he was going to use the loan proceeds for his personal use, Rus, as noted above, denies those assertions in his deposition. More importantly, the Key Bank records of Travelrods that Rus supplied in connection with his second deposition purportedly show that Travelrods was making sales into 2004 – or beyond the time when the loan was obtained. He also identified two persons who were independent contractors of Travelrods who worked on assembling rods for customers and who could be called to so testify.[59] Thus, notwithstanding any loss of corporate records, there is sufficient Rule 56 evidence, when viewed most favorably to Rus, to make a jury question of whether it was fraud to obtain a loan in the name of Travelrods because it was not a real business.

Similarly, the question of whether Rus intended the loan proceeds solely for his personal use and not for a business use by Travelrods is also a disputed issue in light of the deposition testimony. As noted, Rus denied the allegations.[60] Also, Rus testified at some length about the operation of Travelrods, about his difficulties with creating the proper, profitable business model and with appropriate marketing strategies. He also testified that most of the loan proceeds went for machining costs at a supplier.[61] There is also the evidence, cited above, that Travelrods was making sales and retaining the help of assembly contractors through 2004 – the year of the loans in question.

---

[59] *See*, ECF # 60, Ex. 2 at 80.

[60] ECF # 60, Ex. 2 at 61, 84-85.

[61] ECF # 60, Ex. 2 at 74.

The same may also be said of the testimony associated with Amazing Vase, where Rus testified with some specificity as to his attempt to move quickly to seize a business opportunity only to see it fail as a result of an equipment failure that could not be easily or cheaply remedied.

Thus, it is, as Rus observes, a matter for the factfinder whether to ultimately credit such testimony as to whether the loans were for the use of an ongoing business and not for his personal use.[62] For purposes of the motion for summary judgment, however, the testimony must be construed in the light most favorable to Rus, and such construction will be sufficient to deny the motion in this respect.

Finally, as to the purported fraud connected with the June 4, 2004, loan application,[63] an examination of the document itself shows that it is mostly blank. Apart from the name and identifying information of Travelrods, the applicant, the amount and repayment terms of the loan, and Rus's dated signature, there is simply a checkmark in the box stating that Rus pledges a security interest in his shares at St. Paul as security for the loan. There is no representation by Rus, as NCUAB implies, that such pledged shares are adequate to secure a loan of the amount Travelrods received. Indeed, seen most favorably to Rus, the loan document contains no overt misrepresentations nor anything demonstrably fraudulent. Again, NCUAB is free to argue its interpretation of the document to the factfinder at a later time,

---

[62] ECF # 62 at 2-3.

[63] ECF # 60, Ex. 4.

-13-

but in the present context, I do not find that the June, 2004, loan document establishes fraud as an undisputed material fact.

## Conclusion

Therefore, in light of the foregoing, and according to the applicable Ohio veil-piercing law of *Belvedere* as construed in *Dombroski*, because the Rule 56 evidence does not establish any fraud by Rus as an undisputed fact, there is no basis in Ohio law for piercing Travelrods corporate veil so as to make Rus liable for the judgment against it.

NCUAB's motion is, therefore, denied.

IT IS SO ORDERED.

Dated:   November 21, 2012                            s/ William H. Baughman, Jr.
                                                     United States Magistrate Judge